UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL JOHN GADDY,

Plaintiff,

v.

M. TOWNSEND, et al.,

Defendants.

Case No. 16-cv-01319-HSG

**ORDER GRANTING DEFENDANTS'
SECOND MOTION FOR SUMMARY
JUDGMENT**

Re: Dkt. No. 45

## INTRODUCTION

Plaintiff, a *pro se* state prisoner, filed this civil rights action under 42 U.S.C. § 1983, alleging that Defendants retaliated against him in violation of the First Amendment. Now pending before the Court is Defendants' second motion for summary judgment. Dkt. No. 45. Plaintiff has filed a supplemental brief; Defendants have filed a response to Plaintiff's supplemental brief; and Plaintiff has filed a responsive brief. Dkt. Nos. 49, 50, 51. For the reasons set forth below, the Court GRANTS Defendants' second summary judgment motion.

## PROCEDURAL BACKGROUND

The complaint alleges that Defendants Townsend, Voong, and Sandoval retaliated against Plaintiff in violation of his First Amendment rights when they wrongly cancelled or otherwise impermissibly interfered with the processing of his prison grievances. Dkt. Nos. 1, 3.

The Court granted Defendants' first motion for summary judgment, finding that (1) Plaintiff failed to show a genuine dispute as to whether Defendant Townsend's cancellation of Grievance No. 14-03104 was retaliatory; and (2) Defendants Voong and Sandoval's cancellations or denials of Grievance Nos. 14-03409, 15-00017, 1502462, 1502945, and 15-06810 were legitimate penological decisions, supported by the regulations and logic, and not retaliatory. *See*

Dkt. No. 34.  The Ninth Circuit reversed and remanded:

> The record shows that Gaddy filed a grievance to correct an error in his disciplinary record, and defendants granted the grievance and corrected the error.  However, the first level response to Gaddy's grievance also contained an error, Gaddy filed grievances to correct this error, and all of these grievances were denied and the first level response was never corrected.  Because it is unclear from the record why defendants refused to correct the error in the first level response, we reverse and remand for further proceedings.

Dkt. No. 41 at 2.[1]  On remand, the Court directed the parties to file simultaneous briefs addressing whether Defendants' refusal to correct the error contained in the first level response to Grievance No. 14-03104 constituted retaliation in violation of the First Amendment.  Dkt. No. 42.  In response, Defendants filed a second motion for summary judgment and Plaintiff has filed a supplemental brief.

## FACTUAL BACKGROUND

**A.     California Department of Corrections and Rehabilitation Grievance Procedure**

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a).  A prisoner must submit his complaint[2] on CDCR Form 602 (referred to as a "602").  On the 602 form, an inmate explains the issue in Section A, and then lists the relief requested in Section B. The grievance proceeds through three levels of review: (1) screening at the first level of review by a prison official who did not participate in the event at issue and who is of equivalent or higher rank than the participating staff, unless the first level of review is exempted; (2) a second level of review by a hiring authority or designee at a level no lower than Chief Deputy Warden or the equivalent; and (3) a third level of review by a designated representative under the supervision of the third level Appeals Chief or equivalent.  *Id.* § 3084.7.  The third level of review exhausts

---

[1] For convenience, the Court will cite to the Ninth Circuit's opinion as it is found in the district court's docket instead of citing to the Circuit's docket.

[2] The CDCR refers to these complaints as "appeals," but also uses the term "appeal" to refer to the appeals of the first, second, and third level decisions regarding these complaints.  To avoid confusion, the Court will refer to these complaints as "grievances" instead of "appeals."

administrative remedies, which is required before an inmate may bring suit in federal court pursuant to 42 U.S.C. § 1983. *Id.* § 3084.7(d)(3); 42 U.S.C. § 1997e.

The CDCR's grievance system is governed by the regulations set forth at sections 3084 to 3085 of the California Code of Regulations, Title 15. *See* 15 Cal. Code Regs. §§ 3084–3085. Section 3084.6(c) provides that a grievance may be cancelled if *inter alia* it is duplicative of a prior grievance upon which a decision has been rendered or is pending; time limits for submitting the grievance are exceeded where the inmate had the opportunity to timely submit; or the issue grieved has been resolved at a prior level of review. 15 Cal. Code Regs. § 3084.6(c). Section 3084.6(a)(5) provides that the erroneous acceptance of a grievance at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the grievance. 15 Cal. Code Regs. § 3084.6(a)(5).

Inmates have the right to file one grievance every 14 calendar days unless the appeal is accepted as an emergency appeal. 15 Cal. Code Regs. § 3084.1(f). If an inmate abuses the grievance system, an inmate may be restricted, for a period of one year, to one non-emergency grievance every thirty calendar days. 15 Cal. Code Regs. § 3084.4(g). Abuse or misuse of the grievance process includes *inter alia* repeated filings of grievances that have been cancelled pursuant to Section 3084.6(c). 15 Cal. Code Regs. § 3084.4(a)(2).

Inmates can challenge the cancellation of a prior grievance or challenge staff misconduct. If an inmate challenges the cancellation of a prior grievance, he must file the grievance within 30 days of the inmate's receipt of the notice of cancellation of the prior grievance. 15 Cal. Code Regs. § 3084.8(b)(3). If an inmate submits a grievance challenging staff misconduct, correctional staff screen the grievance to determine whether it should be processed as a routine grievance, or processed as a staff complaint appeal inquiry, or referred to Internal Affairs ("OIA") for an investigation. 15 Cal. Code Regs. §§ 3084.5(b)(4), 3084.9(i)(1). Section 3084.9 sets forth the procedure by which grievances are deemed staff complaints, and how such staff complaints are processed.[3] Staff complaints are considered an exception to the regular grievance process. If the

---

[3] Section 3084.9 distinguishes between a citizen's complaint, which is an allegation made by a non-inmate that a correctional official has engaged in misconduct, *see* 15 Cal. Code Regs. §

staff complaint is not referred to the OIA, a confidential inquiry is conducted and a confidential report prepared. *See* 15 Cal. Code Regs. § 3084.9(i)(3)(B). The inmate is notified as to whether the staff complaint has been referred to OIA, and whether the findings determined that the staff in question committed misconduct. *See* 15 Cal. Code Regs. § 3084.9(i)(4). The inmate is not allowed to view the confidential report. The confidential report may only be viewed by the accused staff and the staff involved in processing the staff complaint. *See* 15 Cal. Code Regs. § 3084.9(i)(3)(B). In contrast, a routine grievance is processed according to Sections 3084 to 3084.8 which provide *inter alia* that an inmate receive at least one face-to-face interview regarding his grievance, and that an inmate be provided with written responses providing the reasons for the disposition of the grievance. *See* 15 Cal. Code Regs. § 3084.7(e), (h).

**B.     Plaintiff's Grievances**

This action arises out of an error in an October 2014 classification chrono. At that time, Plaintiff was housed in the Administrative Segregation Unit ("ASU") because of his participation in a June 2014 riot. Dkt. No. 1-1 at 8–9. On October 8, 2014, Plaintiff appeared before a classification committee to review his housing placement and for a pre-minimum eligible release date ("MERD") review. Dkt. No. 1-1 at 8–9. The classification committee decided to retain Plaintiff in the administrative segregation unit because *inter alia* his disciplinary issues were escalating, noting four Security Housing Unit ("SHU") terms since 2005. Dkt. No. 1-1 at 8–9. The classification chrono generated for this hearing listed the four prior SHU terms since 2005 and incorrectly identified the SHU term starting on November 13, 2005, as the result of discipline for battery on a peace officer <u>with</u> a weapon, when it should have stated that it was the result of discipline for battery on a peace officer <u>without</u> a weapon. [4] The classification chrono was otherwise accurate. Dkt. No. 1-1 at 8–9.

3391(b), and a staff complaint, which is an allegation made by an inmate that a correctional official has engaged in misconduct, *see* 15 Cal. Code Regs. § 3084.9(i).

[4] The chrono listed the following four SHU terms, with the error that triggered this action in the description of the first SHU term: (1) a SHU term commencing in November 2005 for battery on a peace officer with a weapon; (2) a SHU term commencing in May 2010 for battery on an inmate; (3) a SHU term commencing in August 2012 for battery on an inmate; and (4) a SHU term commencing in June 2013 for participation in a riot. Dkt. No. 1-1 at 8.

United States District Court
Northern District of California

In Grievance No. 14-03104, Plaintiff sought to have this error corrected.  In Section B of Grievance No. 14-03104, Plaintiff specified the relief requested:

> That the element in **Battery on a P.O. with a weapon**.  The "with a weapon" portion be removed from the allegation prior to being sent to CSR or corrected if already sent.  Based on I have been charged with or found guilty of that charge  And that the 115 Log # C0511020 for the battery on a non confined person be presented by CCII Thornton, as she reviewed it to confirm exactly what I am talking about if necessary by a fact finder.

Dkt. No. 25-1 at 4, 6 (emphasis in original).  The first-level response ("FLR") to Grievance No. 14-03104 granted the relief sought and the chrono was corrected, but the text of the FLR itself contained yet another error.  The FLR incorrectly stated that the chrono originally reflected that Plaintiff had been disciplined for battery on an <u>inmate with a weapon</u>.  There were no errors in the corrected chrono.

On December 1, 2014, Plaintiff appealed the FLR:

> Dissatisfied.  Because although the [grievance] states "granted," nothing I requested has actually been granted.  It has only been admitted that my claim is true.  I clearly requested that the element <u>battery on a peace officer</u> **"with a weapon"** be removed from the allegation prior to <u>being sent</u> to CSR or corrected if already sent.  You stated, "Based on the above information my request that the element of "with a weapon" be removed, prior to being reviewed by the CDR or corrected if already <u>reviewed</u> (I never requested reviewed) from the charge "<u>Battery on an inmate</u>" with a weapon as stated in your classification committee chrono documenting ICC of October 8, 2014 is "granted" at 1st level of Review.  1) I never requested about an [sic] <u>battery on an inmate</u> with a weapon—which isn't listed on my 128G.  My [grievance] is quite clear and it is ironic that you will point out a mistake to make another one to keep from correcting the issue at hand, which I clearly outlined in Section B.  2) I still have the same exact 114D and 128G by CCII-Thornton listing <u>Battery on a P.O w/ a weapon</u> supporting the indeterminate SHU which is absolutely false.  Please show me where and how the error that has been admitted—was corrected and where and how the action I requested has been "granted."  Either one will do.  However if this [grievance] stands as is, I take it that you are telling me that my administrative remedies has [sic] been exhausted on this issue.  That is a refusal to correct any wrongdoing.  I continue to attempt to have my requested actions fully addressed and correctly addressed as they are clearly and correctly outlined in Section B of this [grievance].  CCII Thornton has already admitted the 114D and 128B states [sic] the wrong information in regards to <u>the weapon</u> being connected to the <u>battery on a P.O.</u>  You granted something about a battery on an inmate with a weapon which has arbitrarily nothing to do with the issue of my [grievance].  <u>Check Section B</u> for the correction action requested.

Dkt. No. 25-1 at 5, 7 (emphasis in original).

On December 4, 2014, Defendant Townsend visited Plaintiff at his cell.  The parties provide differing accounts of the ensuing conversation.  According to Plaintiff, Defendant Townsend told that Plaintiff that he should "consider [Grievance No. 14-03104] granted" and then

suggested that Plaintiff withdraw Grievance No. 14-03104 as unnecessary because all the errors would be fixed. Dkt. No. 1 ("Compl.") at 3. When Plaintiff refused to withdraw his grievance, Defendant Townsend angrily threatened to cancel the grievance if plaintiff did not withdraw "his damn [grievance]." *Id.* at 4. Defendant Townsend also allegedly said, "I'm tired of you filing all of these [grievances]—it's time I do something about it anyway.[ ] If you [ ] don't withdraw it I'm [ ] going to cancel it." *Id.*

Defendant Townsend denies that he ever spoke to Plaintiff in that way, or used those words, or acted out of retaliation. Defendant Townsend asserts that on December 4, 2014, he informed Plaintiff that the error in his chrono had been corrected as requested. Defendant Townsend showed Plaintiff a copy of the corrected chrono which no longer had the element of "with a weapon" listed. Defendant Townsend advised Plaintiff that his grievance had been fully resolved at the first level, and that Plaintiff could withdraw the grievance or that Defendant Townsend would cancel it in accordance with California Code of Regulations, title 15, 3084.6(c)(11). Plaintiff refused to withdraw his grievance. ECF No. 45-5 ("Suppl. Townsend Decl.") ¶ 9.

Defendant Townsend states that he understood Grievance No. 14-03104 to be requesting a correction of the classification chrono. He further states that he understood Plaintiff's appeal of the FLR to also be requesting that the chrono be corrected. He did not interpret the appeal of the FLR as requesting that the FLR be revised and re-issued. Suppl. Townsend Decl. ¶ 8.

That same day, Defendant Townsend issued CDCR Form 695 (602 Screening) which cancelled Grievance No. 14-03104 at the second level of screening pursuant to Section 3084.6(c)(11), which provides that a grievance may be cancelled when the issue grieved has been resolved at a previous level. Dkt. No. 21-3 at 20; 15 Cal. Code Regs. § 3084.6(c)(11).

On December 10, 2014, Plaintiff returned the CDCR Form 695 to prison authorities stating as follows:

> This [grievance] has already been processed at second level review because as Appeal Analyst Mr. Bramucci recognized what I requested at prior level review was not resolved. Requiring me to resubmit the [grievance] for 2nd level review. Now that the [grievance] issue as requested <u>really</u> has to be granted. [Grievance No. 14-03104] is being cancelled instead of granted . . . after accepted 12-1-14.

Dkt. No. 1-1 at 13 (emphasis in original). Plaintiff did not file an appeal of the second-level cancellation of Grievance No. 14-03104. Dkt. No. 1-1 at 3.

Plaintiff challenged this cancellation in subsequent grievances, and also challenged the denial or cancellation of one of the subsequent grievances.

**A.      Grievance No. 14-03409**

In Grievance No. 14-03409, submitted on December 4, 2014, Plaintiff alleged that Defendant Townsend's cancellation of Grievance No. 14-03104 was retaliatory:

> I have a right to the findings to my [grievance] whether he cancells [sic] it or not is not the issue. The issue is him retaliating on me for filing [a grievance], him bullying me, yelling at me, trying to force me to withdraw my [grievance] and then threatening me when he's the appeals coordinator. All because I didn't agree to withdraw my [grievance]. This is unethical behavior and staff misconduct by Mr. Townsend. If I request an action which I was initially told was granted but wasn't – then when that's corrected and the [grievance] is actually suppose to be granted and I'm made, forced to withdraw the finding that's misconduct. The [grievance] was suppose [sic] to be granted to in the first place now that it really has to be granted I'm being bullied into withdrawing it.

Dkt. No. 1-1 at 22, 24. In Section B, Plaintiff requested that his allegations regarding Defendant Townsend's unethical behavior be investigated, and that Plaintiff not be retaliated against for filing grievances. *Id.*

On December 11, 2014, Grievance No. 14-03409 was accepted at the second level of review and screened to determine whether it should be processed as a staff complaint or as a regular grievance. Dkt. No. 1-1 at 22–23, 26–27. On February 5, 2015, Plaintiff received the second level decision denying this grievance. The second level decision described Grievance No. 14-03409 as requesting that Grievance No. 14-03104 be processed. Dkt. No. 1-1 at 26. The second level decision determined that Plaintiff's allegations were insufficient to "meet the criteria of a staff complaint":

> [Plaintiff] failed to establish that CCII Townsend violated any sections of the CCR, Title 15, to warrant an investigation into possible reasons for a Staff Complaint as determined by the CDW per CCR, Title 15, Section 3084.9. His request for an investigation into his allegations is DENIED.

Dkt. No. 1-1 at 27. Because the second level decision determined that there had been no staff misconduct, the grievance was processed as a routine grievance. The allegations regarding Defendant Townsend's misconduct were no longer considered and correctional officials therefore

focused only on whether Defendant Townsend's cancellation of Grievance No. 14-03104 was in accordance with applicable prison regulations. Dkt. No. 1-1 at 23–27.

On February 8, 2015, Plaintiff appealed the second level decision as follows:

> Dissatisfied. The issue has not even been addressed. The issue is retaliation for filing [a grievance] resulting in cancellation after the threat was made. The issue about whether or not this [grievance] meets staff complaint standards is not an issue here. No investigation into these matters reveals further that the issue needs to be investigated. It doesn't state why the [grievance] was cancelled; the reason was retaliation.

Dkt. No. 1-1 at 23.

On July 16, 2015, this grievance was cancelled pursuant to Section 3084.6(c)(2) for duplicating a previous grievance, specifically TLR Case No. 1411497 (Local Log No. PBSP-15-00017), and Plaintiff was informed that his administrative remedies had been exhausted. Dkt. No. 1-1 at 29. On August 5, 2015, Plaintiff responded by returning the third level decision to correctional officials with the following handwritten note on the decision:

> This is a <u>retaliation</u> appeal about appeal coordinator Townsend. I already appealed Grievance No. 14-03104. This is not a duplicate to that, check action requested. <u>Please make the appropriate corrections.</u> This is not an appeal about cancelling my appeal; it's about retaliation, with attachments you requested.

Dkt. No. 1-1 at 29 (emphasis in original). On August 18, 2015, Chief Voong warned him that resubmitting a previously-cancelled grievance was prohibited by prison regulations and considered abuse of the grievance process:

> It has been determined that you are attempting to submit [a grievance] that has been previously cancelled. Pursuant to CCR 3084.4 you are advised that this is considered misuse or abuse of the [grievance] process. Repeated violations may lead to your being placed on [grievance] restriction as described in CCR 3084.4(g).
>
> Although you requested that this [grievance] be a staff complaint, the CDW at PBSP reviewed your complaint and found that you failed to establish that CCII Townsend violated any section of the Title 15 which would warrant an investigation into possible reasons for a Staff Complaint. Appeal # PBSP-14-03409 was therefore not categorized as a "Staff Complaint" but instead categorized as "Legal," and addressed the Rejection, Cancellation, and Withdrawal Criteria in the Title 15 which applies to [grievance] # PBSP-14-03104. Since the third level has already used the same criteria to review the cancellation of PBSP-14-03104 in TLR 1411497, this [grievance] remains cancelled at the third level for being duplicative.

Dkt. No. 1-1 at 31.

//

**B.     Grievance No. 15-00017**

In Grievance No. 15-00017, submitted on January 1, 2015, Plaintiff complained that Grievance No. 14-03104 had been cancelled "without a reason stated in writing." He stated that the request to withdraw the appeal of the FLR made no sense because Grievance No. 14-03104 had already been accepted at the second level of review. He further stated that the cancellation was unjustified because he had not done anything to warrant the cancellation and that he had "a right to the finding of [Grievance No. 14-03104] without withdrawing [Grievance No. 14-03104]." Dkt. No. 1-1 at 14–15. In Section B, Plaintiff wrote that he wanted Grievance No. 14-03104 "heard with the appropriate findings therefore the appeal will be allowed to go through the full process and the outcome documented in this appeal." Dkt. No. 1-1 at 15. The second level review denied this grievance, finding that Grievance No. 14-03104 was properly cancelled at the second level because the relief requested was granted in the first level. Dkt. No. 1-1 at 17–18. The third level decision also denied this grievance on the same grounds. Dkt. No. 1-1 at 19–20.

Plaintiff has stated that he does not consider the denial of this grievance to be retaliatory. Dkt. No. 48 at 1.

**C.     Grievance No. 1502462 (OOA-14-10593)**

In Grievance No. 1502462, submitted on September 1, 2015, Plaintiff alleged that Defendant Voong improperly cancelled Grievance No. 14-03409 as duplicative and that prison officials failed to respond to the primary allegation set forth in Grievance No. 14-03409, which is that Defendant Townsend cancelled Grievance No. 14-03409 in retaliation for his protected activity. Dkt. No. 1-1 at 33–34. In Section B, Plaintiff requested that Grievance No. 14-03409 be accepted and be allowed to proceed as a grievance regarding Defendant Townsend's retaliatory actions so that he could exhaust his administrative remedies with respect to this retaliation claim. Dkt. No. 1-1 at 33.

On December 8, 2015, Defendant Voong issued a third level decision regarding Grievance No. 1502462, stating that the grievance had been cancelled pursuant to Section 3084.6(c)(4) for exceeding the time limits for submitting the grievance:

Your [grievance] was cancelled on July 16, 2015 for duplicating a previous or pending

9

appeal and mailed to you on July 28, 2015. Your [grievance], appealing the cancellation of TLR 1410593 was received at the Office of Appeals on September 8, 2015. The envelope containing your submission was signed and dated by Correctional Staff on September 1, 2015 and has a postmark of September 4, 2015. You are past time constraints.

Pursuant to CCR 3084.6(e), once [a grievance] has been cancelled, that [grievance] may not be resubmitted. However, a separate [grievance] can be filed on the cancellation decision. The original [grievance] may only be resubmitted if the [grievance] on the cancellation is granted. You have 30 calendar days to appeal the cancellation. Time constraints begin from the date on the screen out form which cancelled your [grievance].

Dkt. No. 1-1 at 38. Section 3084.6(e) prohibits an inmate from resubmitting or appealing a grievance that has been cancelled, but allows an inmate to file a separate grievance challenging the cancellation. 15 Cal. Code Regs. § 3084.6(e). As discussed *supra*, Section 3084.8(b)(3) requires that a grievance challenging the cancellation of another grievance must be filed within 30 days of the inmate's receipt of the notice of cancellation. 15 Cal. Code Regs. § 3084.8(b)(3).

### D. Grievance No. 1502945 (OOA-14-10593)

In Grievance No. 1502945, submitted on September 15, 2015, Plaintiff alleged that Defendant Voong violated his First Amendment right to access the courts when he cancelled Grievance No. 14-03409 because the cancellation prevented him from exhausting his administrative remedies regarding Defendant Townsend's retaliatory behavior. Plaintiff also alleged that he was unable to appeal the cancellation of Grievance No. 14-03409 because Defendant Voong informed him that he risked losing his appeal rights if he did so. Dkt. No. 1-1 at 41–42. In Section B, Plaintiff requested an investigation into why Defendant Voong prevented him from accessing the courts and exhausting his administrative remedies, and requested that Defendant Voong be impartial in administering the grievance system. Dkt. No. 1-1 at 41.

Plaintiff's grievance was treated as correspondence. On October 5, 2015, Plaintiff's grievance was returned to him, accompanied by a letter responding to his allegations:

The third level has already reviewed the cancellation of PBSP-14-03104 in TLR 1411497 Although you requested that this [grievance] be a Staff Complaint, the CDW at PBSP reviewed your complaint and found that you failed to establish that CCII Townsend violated any section of the Title 15 which would warrant an investigation into possible reasons for a Staff Complaint. [Grievance No.] PBSP-14-03104 was therefore not categorized as a Staff Complaint, but instead categorized "Legal," and addressed the Rejection, Cancellation, and Withdrawal Criteria in the Title 15 which applies to [Grievance No.] PBSP-14-03104. Since the third level has already used the same criteria to review the cancellation of PBSP-1403104 in TLR 1411497, this [grievance] remains cancelled at the third level for being duplicative.

Dkt. No. 1-1 at 43.

On October 9, 2015, Plaintiff submitted a Form 22, stating that the grievance had been returned to him but there was no log number, no answer, no cancellation letter, and no rejection letter. Plaintiff asked how he could get his grievance addressed, and how he could exhaust his administrative remedies with respect to his claim that Defendant Voong was denying him access to the courts. Dkt. No. 1-1 at 44.

On October 12, 2015, Plaintiff returned the October 5, 2015 letter to correctional officials. Dkt. No. 1-1 at 43. That same day, he wrote to both Defendant Voong and the Chief of Inmate Appeals, asking why this grievance had been returned and how he could get the grievance addressed and exhaust his administrative remedies. Dkt. No. 1-1 at 46, 49.

On October 20, 2015, Defendant Sandoval responded, stating that Plaintiff's grievance was being returned because it had been treated as correspondence and not as a grievance, and that the October 5, 2015 letter explained the reasons why. Dkt. No. 1-1 at 44.

On October 22, 2015, Plaintiff submitted a Form 22 stating that he was again returning this grievance back to prison authorities, and requesting clarification as to whether the grievance had been "rejected, cancelled or what." Dkt. No. 1-1 at 50. Plaintiff also stated that Defendant Voong should not be reviewing this grievance since the allegations were against him. On October 21, 2015, Defendant Sandoval responded and stated that Plaintiff's grievance had been received and would be processed in date order. Dkt. No. 1-1 at 50.

On January 21, 2016, Plaintiff was issued a third level decision for this grievance. The third level decision denied this grievance:

II. Screener's Decision: The [Office of Appeals] found that the [grievance] in question, Pelican Bay State Prison (PBSP) Log #14-03104, was cancelled for being resolved at a previous level. This cancellation was already reviewed at the Third Level of Review (TLR) within Log #1411497. While the appellant's [grievance] regarding this cancellation was accepted and addressed by appeals staff at PBSP, the OOA found that the [grievance] was a duplicate matter and additional review was unnecessary.

III. Third Level Decision: [Grievance] is denied.

    A. Findings: Although the appellant asserts that his [grievance] was inappropriately cancelled by the [Office of Appeals], he has not presented sufficient evidence to support his claim that the [grievance] was not a duplicate issue. The appellant submitted PBSP Log #14-03409 as a staff complaint matter against the Appeals

Coordinator. However, the [grievance] was reviewed by the institution's hiring authority and it was determined that the [grievance] did not meet the criteria for processing as a staff complaint.

Pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(a)(5), "Erroneous acceptance of [a grievance] at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the [grievance]." The appellant has failed to submit evidence that the actions of the [Office of Appeals] were inappropriate or inconsistent with the regulations cited herein. The appellant's [grievance] claim that appeal staff at PBSP incorrectly cancelled his submitted [grievance] was already through the TLR. Additional relief in this matter at the TLR is unwarranted.

Dkt. No.1-1 at 53–54.

### E.    Grievance No. 15-06810

In Grievance No. 15-06810, submitted December 17, 2015, Plaintiff alleged that Defendants Sandoval and Voong failed to investigate his claims that Defendant Townsend retaliated against him when they cancelled his grievance[5] on December 15, 2015. In Section B, Plaintiff requested that his allegations be investigated by "a higher authority due to the fact that both M Voong and Sandoval are high ranking officials in the appeals office." Dkt. No. 1-1 at 56–58.

This grievance was accepted at the third level of review and denied on February 25, 2015:

II. Screener's Decision: The [Office of Appeals] cancelled the [grievance] in accordance with the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4). Time limits for submitting the [grievance] were exceeded even though the appellant had the opportunity to submit within the prescribed time constraints.

III. Third Level Decision: [Grievance] is denied.
    A. Findings. Although the appellant asserts that the OOA failed to properly investigate his [grievance] claim, the fact remains that he failed to submit his [grievance] timely. A previously submitted [grievance] was cancelled on July 15, 2015, as it duplicate [sic] a previous or pending [grievance]. The appellant was advised that this [grievance] had been cancelled on July 28, 2015. However, the [grievance] in question (OOA Log #14-10593) had a signature from staff as being accepted for processing dated September 1, 2015, which is beyond the allowable 30 calendar days.

Pursuant to the CCR 3084.8(b)(1), the appellant had 30 calendar days to submit his [grievance] to the TLR. The most recent changes to department [grievance] regulations ensure that an appellant has 30 calendar days to cover the amount of time it takes for the [grievance] to be mailed and for the time it takes to obtain the necessary documentation. The appellant is correct that OOA staff did process the

---

[5] The grievance referred to in Grievance No. 15-06810 appears to be Grievance No. 1502945. The third level decision in Grievance No. 1502945 was dated on December 8, 2015 and most likely received soon thereafter by Plaintiff.

> [grievance] in question, but it was his inability to submit a timely [grievance] that caused the matter to be cancelled. The appellant has failed to submit evidence that the actions of the OOA were inappropriate or inconsistent with the regulations cited herein. Therefore, no relief is provided at the TLR.

Dkt. No. 1-1 at 60.

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10–11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's complaint is made under penalty of perjury, so the facts therein are considered in the adjudication of the summary judgment

13

motion.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. If the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## II.     First Amendment Retaliation Standard

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461–62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain

14

institutional security).  Prison officials cannot simply articulate a general justification for their actions:  they must show why their particular action was reasonably related to the legitimate interest.  *Shephard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016) (defendants must show that they placed plaintiff in administrative segregation because there were witnesses in general population whom he could have improperly influenced; not enough to simply assert that administrative segregation generally helps keep prisoners safe and investigations untainted).  Courts must also consider whether there were ready alternatives to the retaliatory action for achieving the governmental objectives.  *Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2009).

## III.    Analysis

In his post-remand pleadings, Plaintiff states that his principal claim is that Defendant Townsend cancelled Grievance No. 14-03104 in retaliation for Plaintiff alleging in Grievance No. 14-03104 that prison staff had made false allegations against him.  Plaintiff also argues that Defendants' cancellation or denials of Grievance No. 14-03409, Grievance No. 1502462, Grievance No. 1502945, and Grievance No. 15-06810 prove that the cancellation of Grievance No. 14-03104 was retaliatory.  In their second summary judgment motion, Defendants argue that the dispositions of Grievance No. 14-03104, Grievance No. 15-00017, and Grievance No. 1502462 were supported by prison regulations.  They also argue that Plaintiff cannot hold Defendants liable for inmate appeals that they did not handle and that there is no evidence that Defendant Sandoval responded to Plaintiff's Form 22 inquires with retaliatory animus.  They argue that, in the alternative, they are entitled to qualified immunity.

### A.    There is No Genuine Dispute as to Whether Cancellation of Grievance No. 14-03104 Was Retaliatory

Plaintiff argues that Defendant Townsend cancelled Grievance No. 14-03104 because Plaintiff had filed a grievance alleging that prison staff made false allegations against him.  Even viewing the facts in the light most favorable to Plaintiff, there is no genuine dispute as to whether the cancellation of Grievance No. 14-03104 was an adverse action or as to whether cancellation reasonably advanced a legitimate correctional goal.

Plaintiff received the relief requested in Grievance No. 14-03104.  In Section B of

Grievance No. 14-03104, Plaintiff asks that the chrono be corrected to reflect that he had committed battery on a peace officer <u>without</u> a weapon. Although the FLR misstated the relief provided, it is undisputed that the chrono was properly corrected to state battery on a peace officer, with no mention of a weapon. Pursuant to the applicable regulations, a grievance may be cancelled for various reasons, including where the relief requested was granted at the prior level, as is the case here. 15 Cal. Code Regs. § 3084.6(c)(11). The cancellation of Grievance No. 14-03104 was not an adverse action because Plaintiff had received the relief requested and the cancellation was authorized by California's regulations, which serve the legitimate penological purpose of the efficient disposition of inmate grievances. *See* 15 Cal. Code Regs. §§ 3084.1, 3084.4, and 3084.5.

From what the Court can determine from the record, Plaintiff appears to believe that because the FLR wrongly characterized the error that was corrected in the chrono as a prior battery on an inmate, rather than a battery on a correctional officer, the first level appeal was granted as to some ground he did not actually raise. *See* Dkt. No. 25-1 at 7 ("I never requested anything about a battery on inmate with a weapon. . . . It is ironic that you will point out 1 mistake to make another one, to keep from correcting the issue at hand, which I clearly stated in section B.2."). But there is no genuine dispute based on the record that the first level appeal in fact *did* grant exactly the relief Plaintiff requested. While Plaintiff now argues that "the grievance still contained error, giving [him] every right to resubmit the grievance after the first level response," Dkt. No. 49 at 1, based on the undisputed facts here the Court finds it plain that section 3084.6(c)(11) authorized Defendant Townsend to cancel the grievance, because the substantive relief Plaintiff requested was granted at the first level.

Defendant Townsend's conversation with Plaintiff on December 4, 2014, also does not support a finding of retaliatory adverse action. Plaintiff's argument is that the conversation indicated that Defendant Townsend cancelled Grievance No. 14-03104 solely because Plaintiff refused to withdraw it, and that Defendant Townsend could have otherwise allowed the grievance

to proceed.[6]  However, prison regulations and the language of Plaintiff's appeal dictated the disposition of the appeal of the FLR.  Plaintiff's appeal requested that the second level review grant the relief requested in Section B, namely the correction of the chrono.  Accordingly, the grievance was cancelled according to Section 3084.6(c)(11), which allows the cancellation of grievances that have been resolved at the prior level.  Even accepting Plaintiff's characterization of the conversation, Defendant Townsend's statements to the effect that he planned to cancel the grievance if not withdrawn described an action he had the right to take under the relevant regulation, and do not create a triable issue of fact as to whether the cancellation was an adverse action in response to protected conduct.

In its order reversing and remanding this case, the Ninth Circuit stated that Plaintiff filed grievances to correct the error in the FLR to Grievance No. 14-03104, and that it is unclear from the record why Defendants refused to correct the error.  Dkt. No. 41 at 2.  The Court has not identified anything in the record that establishes that prison regulations require officials to correct typographical errors in their responses to grievances, and Plaintiff has not directed the Court to any such regulation.[7]  Also, having re-reviewed the record closely, the Court finds it undisputed that nothing in the record, including Plaintiff's grievances on their face, indicates that Plaintiff requested that the error in the FLR to Grievance No. 14-03104 be corrected.  When Plaintiff appealed the FLR of Grievance No. 14-03104, he stated that he wanted the relief requested in

---

[6] Plaintiff mischaracterizes Defendant Townsend's Second Declaration (Dkt. No. 45-15) as acknowledging that Defendant Townsend had the option of granting the appeal and allowing Grievance No. 14-03104 to proceed with the subsequent levels of review.  Dkt. No. 49 at 2–3. Defendant Townsend clearly states that he did not believe that prison regulations allowed him to grant Grievance No. 14-03104 at the second level of review.  Defendant Townsend further states that he could only have granted the appeal if he ignored Title 15.  Townsend Supp. Decl. ¶ 11.
[7] Reading the entire FLR in context, it is clear that the "Battery on an Inmate with a Weapon" references are typographical errors.  Under "Determination of Issue," the FLR accurately describes the error in the chrono and the needed correction.  *See* Dkt. No. 45-12 at 4 ("After a close review of this matter, I find that the charge . . . dated November 13, 2005 for Battery on a Peace Officer Not Involving the Use of a Weapon was erroneously documented in the Classification Committee Chrono for ICC of October 8, 2014.  Specifically, it was documented that a weapon was used in that offense which is incorrect.").  It is undisputed that this was the error Plaintiff challenged in his original grievance, and also undisputed that the chrono contained no reference to any "Battery on an Inmate with a Weapon."  *See* 25-1 at 4, 6; Dkt. No. 1-1 at 8.  Captain Parry confirms in his declaration that the incorrect description in the FLR was an inadvertent error.  Dkt. No. 45-11 at ¶ 6.

17

Section B, which was the correction of the chrono. Dkt. No. 25-1 at 4, 6. Grievance No. 14-03409 alleged that Defendant Townsend's cancellation of Grievance No. 14-03104 was retaliatory, and requested that Defendant Townsend be investigated and that Plaintiff not be retaliated against. Dkt. No. 1-1 at 22, 24. Grievance No. 15-00017 alleged that Grievance No. 14-03104 had been cancelled without a reason stated in writing, and requested that the cancellation be rescinded and that Grievance No. 14-03104 be allowed to go through the "full process." Dkt. No. 1-1 at 17–18. Grievance No. 1502462 alleged that Defendant Voong improperly cancelled Grievance No. 14-03409 as duplicative, and requested that Grievance No. 14-03409 be allowed to proceed so that Plaintiff could exhaust his administrative remedies with respect to this claim. Dkt. No. 1-1 at 33–34. Grievance No. 1502945 alleged that Defendant Voong violated Plaintiff's First Amendment right to access the courts when he cancelled Grievance No. 14-03409 because the cancellation prevented him from exhausting his administrative remedies regarding Defendant Townsend's retaliatory behavior. Dkt. No. 1-1 at 41–42. Grievance No. 15-06810 alleged that Defendants Sandoval and Voong failed to investigate Plaintiff's claims against Defendant Townsend when they cancelled Grievance No. 14-03409, and requested that these allegations be investigated by "a higher authority due to the fact that both M Voong and Sandoval are high ranking officials in the appeals office." Dkt. No. 1-1 at 56–58.

Plaintiff now claims in his supplemental brief that he sought correction of the FLR by filing a grievance that was later cancelled. Dkt. No. 49 at 2. The Court presumes that Plaintiff is referring to Grievance No. 14-03409, and not to his appeal of the FLR, because he specifies that a grievance was filed, and not an appeal. Nowhere in Grievance No. 14-03409 does Plaintiff discuss the error in the FLR or request the correction of the FLR. Grievance No. 14-03409 identifies two issues. First, Grievance No. 14-0309 alleges that Defendant Townsend retaliated against him by yelling, bullying, and threatening him, and trying to force him to withdraw his grievance. Second, Grievance No. 14-03409 argues:

> If I request an action which I was initially told was granted but wasn't – then when that's corrected and the [grievance] is actually suppose [sic] to be granted and I'm made, forced to withdraw the finding that's misconduct. The [grievance] was suppose [sic] to be granted to in the first place now that it really has to be granted I'm being bullied into withdrawing it.

18

Dkt. No. 1-1 at 22, 24. The first issue grieved is Defendant Townsend's behavior on December 4, 2014. It is unclear what the second issue grieved is, especially given that Plaintiff appears to acknowledge that the error was corrected. Plaintiff emphasizes "an action which I was initially told was granted but wasn't" and argues that being forced to withdraw the finding reflected misconduct on the part of Defendant Townsend. There is no indication from Plaintiff's allegations that he was grieving the failure to correct the FLR. Also, the relief requested in Grievance No. 14-03409 was that Defendant Townsend's unethical behavior be investigated, and that Plaintiff not be retaliated against for filing grievances. *Id.* There is no indication that Plaintiff was seeking a correction of the FLR.

The Court also notes there is no basis in the record to conclude that either the corrected error in the October 2014 classification chrono or the uncorrected error in the FLR affected Plaintiff's housing or classification. The CDCR uses an Inmate Classification Score System ("ICSS") to determine an inmate's housing placement. Dkt. No. 45-3 ("Hancock Decl."), ¶ 6. After considering several variables, such as an inmate's social factors and history of incarceration behavior, the ICSS assigns an inmate one of four scores. These four scores correspond to the four housing security levels. The greater a score, the higher the security level of the housing. Hancock Decl. ¶ 7. A score of 0-18 is Level I, 19-27 is Level II, 28-51 is Level III, and 52+ is Level IV. Hancock Decl. ¶ 7. Level III and IV inmates are placed in 180 degree or 270 celled housing units. Hancock Decl. ¶ 7. The Security Housing Unit is the most secure area within a Level IV prison. It is designed to provide maximum coverage and to house inmates that cannot be housed with the general population of inmates, such as inmates that are validated prison gang members, gang leaders, or inmates who have been found guilty of certain disciplinary actions. SHU terms vary in length. Hancock Decl. ¶ 8. As noted in the October 2014 classification chrono, when Plaintiff appeared before the classification committee, his classification score was 435 and he had been assigned to the SHU in June 2014 because he had been found guilty of participating in a riot. Hancock Decl. ¶ 9. In other words, prior to the issuance of the classification chrono and the related FLR, Plaintiff had already been deemed a Level IV inmate and ineligible for 270-design Level IV housing. Hancock Decl. ¶ 9. The classification committee's October 2014 decision to

19

retain him in administrative segregation was based on numerous factors, including having had four

SHU terms since 2005, but there is no evidence that the committee focused on the disciplinary

violations triggering the SHU terms.  Accordingly, there is no basis in the record, even making all

reasonable inferences in Plaintiff's favor, to support Plaintiff's claim that either error affected his

classification score or housing placement.

The Court therefore GRANTS summary judgment in favor of Defendants with respect to

Plaintiff's claim that Grievance No. 14-03104 was cancelled in retaliation for engaging in

protected activity, in violation of the First Amendment.

### B. There is No Genuine Dispute as to Whether Handling of Subsequent Grievances Was Retaliatory

Viewing the facts in the light most favorable to Plaintiff, there is also no genuine dispute as

to whether Defendants' disposition of the grievances after Grievance No. 14-03104 was

retaliatory.

First, there is no genuine dispute that the cancellation or denials of these grievances were

not retaliatory adverse actions.  Plaintiff argues that these grievances—Grievance No. 14-03409,

Grievance No. 1502462, Grievance No. 1502945, Grievance No. 15-06810—were cancelled or

denied in order to prevent him from obtaining relief with regard to his claim that the cancellation

of Grievance No. 14-03104 was retaliatory.[8]  However, as discussed *supra*, Defendants are

entitled to summary judgment on Plaintiff's claim that the cancellation of Grievance No. 14-03104

was retaliatory.[9]

Second, the cancellation or denial of these grievances was authorized by the relevant

prison regulations which serve the legitimate penological purpose of the efficient disposition of

---

[8] The Court does not address whether the denial of Grievance No. 15-00017 was retaliatory because Plaintiff has stated that he does not contend that denial was retaliatory.  Dkt. No. 48 at 1.
[9] Grievance No. 14-03409 alleged that Defendant Townsend's cancellation of Grievance No. 14-03104 was retaliatory.  Dkt. No. 1-1 at 17–18, 22, 24.  The three subsequent grievances—Grievance No. No. 1502462, Grievance No. 1502945, Grievance No. 15-06810—challenged the cancellation of Grievance No. 14-03409, arguing that Grievance No. 14-03409 was not duplicative; that its cancellation prevented him from exhausting his administrative remedies with respect to Defendant Townsend's retaliation; and that prison officials had not investigated his claims regarding to Defendant Townsend's retaliation.

United States District Court
Northern District of California

inmate grievances. *See* 15 Cal. Code Regs. §§ 3084.1, 3084.4, and 3084.5. Grievance No. 14-03409 was cancelled as duplicative as authorized by Section 3084.6(c)(2). Grievance No. 1502462 and Grievance No. 15-06810 were both denied as untimely, as authorized by Section 3084.6(c)(4). Grievance No. 1502945 was denied because it relitigated a previously filed grievance, as authorized by Section 3084.6(c)(2). Ultimately, all of Plaintiff's follow-up grievances were not viable, because he had been granted the requested relief—correction of the chrono—at the first level of review of the original grievance. There is no triable issue of fact as to Plaintiff's claim of retaliation.

The Court therefore GRANTS summary judgment in favor of Defendants with respect to Plaintiff's claim that Defendants' handling of Grievance No. 14-03409, Grievance No. 1502462, Grievance No. 1502945, and Grievance No. 15-06810 constituted retaliation for protected activity, in violation of the First Amendment.

### C. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity, courts must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. Because there was no violation of Plaintiff's constitutional rights with respect to the handling of Grievance No. 14-03409, Grievance No. 14-03104, Grievance No. 15-00017, Grievance No. 1502462, Grievance No. 1502945, or Grievance No. 15-06810, there is no necessity for further inquiries concerning qualified immunity.

//

//

//

**CONCLUSION**

For the foregoing reasons, the Court finds that there is no triable issue of fact as to whether Defendants' handling of Grievance No. 14-03104, Grievance No. 14-03409, Grievance No. 1502462, Grievance No. 1502945, or Grievance No. 15-06810 violated the First Amendment. Defendants' second summary judgment motion is GRANTED. Dkt. No. 45. The Clerk shall terminate Dkt. No. 45; enter judgment in favor of Defendants Townsend, Voong, and Sandoval; and close the file.

**IT IS SO ORDERED.**

Dated: 03/29/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge